**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

CSX TRANSPORTATION, INC.,
a corporation,

> Plaintiff,

v.                                                    CIVIL  ACTION  NO.  3:10-1099

TIM COLLINS, Individually and
as Administrator for the Estate of
Willie Collins, Deceased,

> Defendant.

**MEMORANDUM OPINION AND ORDER**

This is an action for declaratory relief brought by the plaintiff CSX Transportation, Inc.

("CSX") against the defendant Tim Collins as the administrator and personal representative of the

estate of Willie Collins, pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332.  CSX seeks a

declaration that the defendant must indemnify it for any costs and expenses it incurs as a result of

his decision to file a concurrent Kentucky lawsuit on behalf of the decedent.  Further, CSX seeks

a declaration that the State court lawsuit is precluded by a release clause signed by the decedent.

Currently pending is the defendant's Motion to Dismiss. [Doc. 3] For the reasons that follow,

the Court **GRANTS** the motion and **DISMISSES** this action **WITHOUT PREJUDICE**.

**I.      Background and Procedural History**

The defendant Tim Collins is the administrator and personal representative of the estate of

Willie Collins. Willie Collins was employed as a laborer, oiler and blacksmith by the Chesapeake

and Ohio Railway Company and its successor in interest, the plaintiff CSX, from 1955 to 1991.

During his employment, Willie Collins was exposed to asbestos and other toxic substances, which ultimately led to a diagnosis of asbestosis.  As a result, in 1999, he filed a claim against CSX in the Circuit Court of Mason County, West Virginia under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*

The Mason County action was ultimately settled for a sum of $20,000.  As a condition of the settlement, Willie Collins signed a full release of related future tort claims he could later have against CSX.  The release provides in pertinent part:

> It is the intent of RELEASOR to release any and all claims described herein against RELEASEE for all injuries and diseases, sustained by RELEASOR, however incurred, which might form the basis of any action under . . . [FELA], the Boiler Inspection Act, any collective bargaining agreement or employee protective condition including without limitation, any claim under The Americans With Disabilities Act or any state discrimination law, or any other law or laws, either state or federal, or any action at common law, and any derivative claims of the heirs, personal representatives, or assigns of RELEASOR, beneficiaries of RELEASOR, RELEASOR'S estate . . . or others claiming an interest therein. Such claims are by this understanding and agreement expressly released.

Pl.'s Compl. Ex. A, at 2.  The release purportedly covers all claims for "known and unknown, manifested and unmanifested, suspected and unanticipated pulmonary-respiratory diseases and/or injuries including . . . increased risk of cancer[.]"  *Id.* at 1.  Further, the settlement agreement contains an indemnity provision which essentially obligates Mr. Collins to compensate CSX for any expenses it incurs in defending against claims related to covered injuries.  *Id.* at 4.

A few years after settling his Mason County action with CSX, Willie Collins was diagnosed with lung cancer.  He passed away on December 2, 2008.  Thereafter, Tim Collins, his son and the administrator and personal representative of his estate, instituted an action against CSX in Greenup County Kentucky Circuit Court for violations of FELA and the Locomotive Boiler Inspection Act. Among his claims is a wrongful death count.  CSX answered the complaint, attaching the settlement

agreement and raising the release clause as an affirmative defense.  Def.'s Reply to Pl.'s Resp. Opp'n Ex. A, at 5, 10-15.  The Kentucky action is still in the midst of discovery.

On September 13, 2010, CSX initiated the instant action in this Court under the Declaratory Judgment Act, 28 U.S.C. § 2201, to declare valid the provisions of the release and indemnity clauses signed by the decedent in 2001.  The defendant has filed a Motion to Dismiss CSX's request for declaratory relief.

## II.   Discussion

The defendant's Motion to Dismiss is based upon several grounds.  First, the defendant contends that this Court lacks subject matter jurisdiction and personal jurisdiction to hear the complaint.  Second, he argues that venue is improper in this Court.  Third, he contends that, because the Kentucky court now has concurrent jurisdiction over a case where the issue of the release clause's validity will necessarily have to be decided, this Court should effectively abstain from deciding this case.  Finally, in the alternative, the defendant contends that the complaint fails to state a substantive claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure in light of the fact that the release in question does not preclude future FELA claims for lung cancer.

The Court believes that this action may be resolved under the applicable abstention doctrines, and therefore does not address the last ground in this opinion.

### A.     Subject Matter Jurisdiction

Federal courts possess limited subject matter jurisdiction, and the party seeking to invoke that jurisdiction bears the burden of proving its existence.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  The Declaratory Judgment Act itself does not provide a basis for subject matter jurisdiction.  *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950);

*Galloway and Associates, PLLC v. Fredeking & Fredeking Law Offices, LC*, No. 3:10-0830, 2010 WL 3955790, at *2 (S.D. W. Va. Oct. 8, 2010).  That act merely permits the district court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," in a case or controversy that is otherwise properly within its jurisdiction.  28 U.S.C. § 2201(a).  In that vein, CSX seeks to meet its jurisdictional burden by contending that this Court may hear its case under 28 U.S.C. § 1332(a) because the parties are completely diverse and the amount in controversy exceeds $75,000.

The parties agree that complete diversity exists in this case.  CSX is a Virginia corporation with its principal place of business in Florida.  The defendant, sued in his capacity as administrator of Willie Collins's estate, is a citizen and resident of the State of Kentucky.  What is contested, however, is whether CSX's request for relief satisfies the amount in controversy.  "If the plaintiff claims a sum sufficient to satisfy the statutory requirement [for the amount in controversy], a federal court may dismiss only if 'it is apparent, *to a legal certainty*, that the plaintiff cannot recover the amount claimed.'"  *JTH Tax, Inc.  v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)) (emphasis in original).

The defendant contends that CSX cannot satisfy the amount in controversy requirement in this case because there are only two mutually exclusive results possible from an ultimate disposition: (1) the release clause, as a general matter, is invalid in light of 45 U.S.C. § 55 and therefore CSX would not be entitled to indemnification for failing to state a claim; or (2) the release is permitted, barring the defendant's state court claims and entitling CSX to indemnification for litigation expenses.  Under either result, the defendant submits, CSX cannot establish that its costs and expenses in this matter would exceed $75,000.

Where a plaintiff seeks declaratory relief, the "amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977).  In the Fourth Circuit, this value may be determined by the amount a potential judgment could mean to either party. *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 492 (S.D. W. Va. 2001) ("[O]ur Court of Appeals [has] adopted the either-viewpoint rule, concluding the value of injunctive [or declaratory] relief is properly judged from the viewpoint of either party." (citation omitted)); *Moore v. Cabot Oil & Gas Corp.*, No. 2:06-0538, 2007 Dist. LEXIS 32503, at *14-15 (S.D. W. Va. May 2, 2007) (citing *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002)).  Here, the result of a decision favorable to CSX would establish that CSX must be indemnified for the costs and expenses of litigation that it incurs in defending the defendant's claims in state court.  *See Gov't Employees Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964).  In that respect, the defendant is perhaps correct that, at this point, CSX unlikely has incurred over $75,000 in legal fees and expenses.  However, this characterization of the jurisdictional inquiry is too narrow in that it fails to consider that a favorable decision for CSX would also likewise preclude the Kentucky action by establishing the validity of the release clause at issue in this case.  Consequently, CSX would avoid the effects of an adverse judgment in State court.  *Cf. Erie Ins. Prop. & Cas. Co. v. Smith*, No. 5:05-01137, 2006 U.S. Dist. LEXIS 64599, at *8-9 (S.D. W. Va. Sept. 8, 2006) (finding that the amount in controversy for an insurer's request for a declaration that an insured was exempted from coverage is the value of the insured's underlying claim).

In light of the defendant's claims in Kentucky, the potential pecuniary losses to CSX—and the potential gains by the defendant—exceed the jurisdictional amount, and the defendant has not shown to a legal certainty that this conclusion is in error.  While the defendant does not request a

specific amount of damages in state court, he asserts FELA occupational negligence and wrongful death counts against CSX.  The wrongful death count itself seeks to recover the value of Willie Collins's life in an amount permitted under FELA.  Wrongful death damages under FELA "flow from the deprivation of the pecuniary benefits which . . . beneficiaries might have reasonably received" if the deceased had not died from his injuries.  *In re Air Crash Disaster Near Chicago, Ill.*, 701 F.2d 1189, 1193 n. 4 (7th Cir. 1983) (quotation omitted); *see also Norfolk & W. Ry. Co. v. Liepelt*, 444 U.S. 490, 493 (1980).  This value will exceed the jurisdictional threshold.

In sum, it is the value of the rights being adjudicated in Kentucky State court that determines the amount in controversy.  CSX has shown that this value will exceed $75,000.  Therefore, this Court has subject matter jurisdiction to proceed.

### B.    Personal Jurisdiction

The defendant also asks the Court to dismiss the complaint on the ground that it lacks personal jurisdiction over the defendant.  Under Rule 12(b)(2), the plaintiff bears the burden of producing facts supporting the existence of jurisdiction upon a challenge by the defendant.  *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  The district court may exercise personal jurisdiction over a non-consenting, non-resident defendant if authorized by the long-arm statute of the state in which it sits, and the exercise is consistent with the Due Process Clause of the Fourteenth Amendment. *Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).  Because West Virginia's long-arm statute permits jurisdiction to the extent of the Due Process Clause, *see* W. Va. Code § 56-3-33; *Charter Commc'ns. VI, LLC v.*

*Eleazer*, 398 F. Supp. 2d 502, 505 (S.D. W. Va. 2005),[1] the Court must assess whether the exercise of jurisdiction in this case would comport with the applicable constitutional requirements.

      To comport with the Due Process Clause, the plaintiff must show that the non-resident defendant has "minimum contacts" with the forum State and that requiring the defendant to defend in the State "does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Miller v. Mariner Fin., LLC*, No. 3:10-33, 2010 U.S. Dist. LEXIS 55978, at *10-11 (N.D. W. Va. June 8, 2010).

      In this case, CSX argues that this Court has specific personal jurisdiction over the defendant by virtue of his decedent's contacts with West Virginia. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711-12 (4th Cir. 2002) (citing *Helicopteros Nacionales de*

---

[1] Because CSX has sued the defendant in his capacity as administrator for Willie Collins's estate, West Virginia law governs his capacity to sue or be sued in federal district court. *See* Fed. R. Civ. P. 17(b). It follows that the West Virginia long-arm statute determines whether this Court could exercise personal jurisdiction over the defendant as administrator. West Virginia has not explicitly authorized foreign executors or administrators to sue and be sued in local courts. *See* W. Va. Code § 56-3-33 ("executor" or "administrator" is not included in the definition of "non-resident"); *see also Glucksberg v. Polan*, No. 3:99-0129, 2002 U.S. Dist. LEXIS 24390, at *28 (S.D. W. Va. Dec. 16, 2002) ("[T]he only parties with standing to represent the estate of [a] decedent in a West Virginia court (a category that effectively includes [a] court sitting in diversity) are personal representatives of the estate who were duly appointed in West Virginia."). Therefore, at first blush, the West Virginia statute seems to have preserved the "common law rule that an executor or administrator is not subject to suit in a state other than that of his appointment." *See Conlee v. Douglas*, 745 F.2d 896, 899 (4th Cir. 1984). Recently, however, the Supreme Court of Appeals of West Virginia found that W. Va. Code § 56-3-33 did not prohibit a West Virginia circuit court from exercising personal jurisdiction over a non-resident executor despite the ambiguous language in the section. *See Nezan v. Aries Techs. Inc.*, No. 35495, 2010 W. Va. LEXIS 129, at *27-28, 33 (W. Va. Nov. 17, 2010). *Nezan* would seem to place West Virginia in line within the more modern rule that long-arm personal jurisdiction may be asserted over a non-resident administrator or executor if the decedent has minimum contacts with the forum state. *See SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 180-81 (2d Cir. 2000) (citing long-arm statute which provides "jurisdiction over an executor with respect to a cause of action against a decedent arising from activity within the state").

*Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Our court of appeals has detailed a three-part

inquiry to guide district courts in determining whether specific jurisdiction exists:

> In determining specific jurisdiction, we consider (1) the extent to which the defendant "purposefully availed" [himself] of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable."

*ALS Scan, Inc.*, 293 F.3d at 712 (citations omitted). The Court addresses the defendant's arguments

as to each of these elements.

### 1. Willie Collins Purposefully Availed Himself of the Privilege of Conducting Activities in West Virginia

The plaintiff must show that the non-resident defendant purposefully availed himself of the

privilege of conducting activities in the forum State in order to invoke the benefits and protections

of local law. *See Hanson v. Denckla*, 357 U.S. 235, 253-54 (1958). The "defendant's conduct and

connection with the forum . . . [must be] such that he should reasonably anticipate being haled into

court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see also City

Nat'l Bank v. Clark*, No. 2:05-0675, 2006 U.S. Dist. LEXIS 9503, at *9 (S.D. W. Va. Feb. 23, 2006)

(noting that a defendant's activities may constitute purposeful availment where they are directed

toward, and create a "substantial connection" with, the forum (citing *Burger King Corp. v.

Rudzewicz*, 471 U.S. 462, 475 (1985))).

The defendant here argues that all the events giving rise to CSX's claims in this Court

occurred in the State of Kentucky. Specifically, Willie Collins worked for CSX in Kentucky, and

was diagnosed with cancer in Kentucky. Further, his estate was probated in Kentucky, and the

defendant as representative of his estate is similarly a resident of Kentucky. Alternatively, CSX

contends that the decedent in this case purposefully availed himself of the benefits of West Virginia

-8-

law when he chose to bring his original FELA asbestosis claim against CSX in Mason County, West Virginia roughly twelve years ago.  As a result of that case, a settlement agreement was reached in West Virginia.

The fact that a non-resident enters into a contract in the forum State does not necessarily establish minimum contacts, *see Burger King*, 471 U.S. at 478-79, but "the surrounding facts, negotiations, contract terms, location of payment and the parties' course of dealing may do so." *See Message Sys. v. Integrated Broadband Servs., LLC*, No. CCB-09-2122, 2010 U.S. Dist. LEXIS 72559, at *11 (D. Md. July 19, 2010).[2]

This case is somewhat procedurally complex in that it presents a request for declaratory relief based upon the provisions of an agreement created in West Virginia, yet is precipitated by the filing of a Kentucky action.  On balance, the Court believes that Willie Collins chose to utilize the benefits and protections of West Virginia's law and courts by filing his original FELA action in Mason County, and could have reasonably anticipated the prospect of having to defend a subsequent action here for declaratory relief based upon the settlement agreement he entered into in 2001.

---

[2] The Fourth Circuit has specified a variety of nonexclusive factors to aid in the purposeful availment inquiry in cases involving contracts and commercial transactions, such as:

> (1) whether the defendant maintains offices or owns property in the forum state; (2) whether the defendant reached into the forum state to solicit or initiate business; (3) whether the defendant deliberately engaged in significant business activities in the forum state; (4) whether the parties contractually agreed that the law of the forum state would govern disputes; (5) whether the defendant made in-person contact with a resident of the forum state regarding the business relationship; (6) the nature, quality and extent of the parties' communications about the business being transacted; and (7) whether the performance of the contract was to occur within the forum.

*Message Sys.*, 2010 U.S. Dist. LEXIS 72559, at *11-12 (citing *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)).  The Court considers these factors in conducting its analysis.

The defendant is correct that the passage of time may, in some instances, attenuate the connection between a non-resident and a forum State on the basis of a single contact. However, the agreement at issue here has no sunset provision, and was created for the purpose of prospectively limiting CSX's liability. CSX's right to seek a declaratory judgment on the settlement agreement is made ripe by the filing of the Kentucky action, but the indemnity and release provisions at issue in this case were signed, executed, and negotiated in West Virginia.

Therefore, the Court finds that the decedent purposefully availed himself of the benefits and protections of West Virginia law for purposes of this action because he chose to initiate a FELA occupational lung claim in Mason County, and because he signed a release and indemnification agreement in West Virginia as part of the settlement of that claim. *Cf. Mun. Mortgage & Equity v. South Fork Apartments Ltd. P'ship*, 93 F. Supp. 2d 622, 626 (D. Md. 2000) (noting that one of the most important factors in the purposeful availment inquiry is "whether the defendant initiated the business relationship [with an entity in the forum State] in some way").

### 2. CSX's Declaratory Judgment Claim Arises Out of Willie Collins's Connection to West Virginia

Similar to the purposeful availment inquiry, the instant action arises out of Willie Collins's original West Virginia connection. That is, he initiated his original claim against CSX, and entered into the settlement agreement at issue in this case, in West Virginia. Because the instant lawsuit concerns the provisions of that settlement agreement, the Court finds that CSX's claim arises out of the decedent's West Virginia connections. *See, e.g.*, *Reilly v. Chambers*, 215 F. Supp. 2d 759, 763 (S.D. W. Va. 2002) (finding that a plaintiff's claims arose out of the defendants' contacts with the forum State where defendants voluntarily entered into a contract that was partially signed—and was to be performed—in the forum State).

-10-

### 3.    Due Process

Finally, the exercise of jurisdiction must be constitutionally reasonable. *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001). District courts must consider a variety of factors in engaging in this analysis, including:

> "[T]he burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."

*Id.* (citing *Burger King*, 471 U.S. at 477 (internal quotation marks omitted)). The constitutional inquiry is not exacting. Rather, it is meant to "ensure that jurisdictional rules are not exploited" such that litigation is made overly difficult and inconvenient for a party relative to his opponent. *Id.* It must be remembered that due process does not require the defendant to be physically present in the forum. *Hanson and Morgan Livestock, Inc. v. B4 Cattle Co. Inc.*, No. 5:07-00330, 2008 U.S. Dist. LEXIS 65707, at *11 (S.D. W. Va. Aug. 27, 2008).

Here, while defending a suit in West Virginia is somewhat inconvenient for the defendant, the decedent originally chose to litigate his 1999 FELA case in Mason County, and the defendant has retained local West Virginia counsel. His inconvenience is not "so grave as to offend constitutional due process principles." *Id.* Second, West Virginia has an interest in providing recourse for signatories of settlement agreements entered into within its borders and arising from state court litigation. As to the third factor, a declaratory judgment could ostensibly provide the parties with greater understanding of their obligations under the indemnification and release clauses, thereby facilitating resolution of their dispute. Finally, the Court cannot conclude that the exercise of jurisdiction would run counter to the interest in furthering fundamental substantive social policies.

In light of the foregoing, the Court has personal jurisdiction over the defendant because

Willie Collins had the requisite minimum contacts with West Virginia, and because the maintenance

of this action does not offend the traditional notions of fair play and substantial justice. *Int'l Shoe*,

326 U.S. at 316.

### C.     Venue

The defendant also seeks to dismiss the case on the ground that venue is improper in this

Court.  Under 28 U.S.C. § 1391(a), a civil action brought on the basis of diversity of citizenship may

be initiated only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the
> claim occurred, or a substantial part of property that is the subject of the action is situated,
> or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time
> the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).  On a motion to dismiss for improper venue under Rule 12(b)(3), all inferences

should be drawn in favor of the plaintiff.  *See Jones v. Koons Auto., Inc.*, No. DKC 09-3362, 2010

U.S. Dist. LEXIS 117870, at *16 (D. Md. Nov. 5, 2010).

Here, the settlement agreement at issue arose out of the resolution of Willie Collins's Mason

County action.  Mason County is located within the Southern District of West Virginia.  And, as

noted, it is uncontested that the settlement agreement was negotiated and signed in the Southern

District.

CSX concedes that the defendant's Kentucky action technically prompted its decision to seek

declaratory relief in this Court.  After all, it is the defendant's contention in that action that Willie

Collins was exposed to dangerous toxins while employed with CSX.  Those events, to be sure, took

place in Kentucky.  However, this Court is not asked to determine questions on substantive tort

liability.  It must only consider whether provisions of a settlement agreement entered into in this

district are valid and enforceable.  The Court therefore finds that a substantial part of the events or omissions giving rise to the instant action concern the circumstances surrounding the formation of the settlement agreement entered into in Mason County.  It is that agreement that both resolved the West Virginia lawsuit and gave rise to CSX's request for declaratory relief.

For these reasons, venue is proper in this case under 28 U.S.C. § 1391(a)(2).

### D.      Abstention

CSX seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that the release and indemnity clauses signed by Willie Collins in 2001 are valid and enforceable.  The defendant asks this Court to dismiss or stay the instant case because the parallel Kentucky action was filed first in time.[3]  The Supreme Court has repeatedly stated that federal courts have a strict duty to exercise jurisdiction conferred by Congress.  *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). Nonetheless, this duty is not absolute, and the district court may in some cases abstain from hearing cases otherwise properly before it.  *See id.*  The Declaratory Judgment Act provides one such instance, as the Supreme Court has characterized it as "'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant'" to obtain relief.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494-95 (1942); *see also W. World Ins. Co. v. Lexcorp*, No. 4:10-020, 2010 U.S. Dist. LEXIS 104913, at *4 (W.D. Va. Oct. 1, 2010). Indeed, "[f]ederal courts are . . . afforded 'great latitude in determining whether to assert jurisdiction' over such cases."  *First Fin. Ins. Co. v. Crossroads Lounge, Inc.*, 140 F. Supp. 2d 686,

---

[3] In making his argument, the defendant invokes the "first-filed doctrine." Under this doctrine, there is a "strong presumption in favor of the forum of the first-filed suit."  *See 800-Flowers, Inc. v. Intercontinental Florist*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994).

689 (S.D. W. Va. 2001) (citing *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (further quotation omitted)).

In determining whether to abstain from hearing a request for a declaratory judgment in the face of a parallel state action, district courts should consider the four factors delineated by the Fourth Circuit in *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir. 1994). Those factors are:

> (I) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts, (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending, (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law," and . . . [iv] whether the declaratory judgment action is being used merely as a device for "procedural fencing"—that is, "to provide another forum in a race for res judicata" or "to achiev[e] a federal hearing in a case otherwise not removable."

*State Farm Mut. Auto. Ins. Co. v. Shingleton*, No. 1:07-29, 2007 U.S. Dist. LEXIS 83200, at *6-7 (N.D. W. Va. Nov. 8, 2007) (citing *Nautilus*, 15 F.3d at 377 (citations omitted)).

Under the first factor, a State's interest is important enough to warrant abstention when an issue of state law presented is complex or novel, and the state would prefer to settle the law on the issue itself. *See Shingleton*, 2007 U.S. Dist. LEXIS 83200, at *8. The defendant here has filed a FELA second disease action in Kentucky. Federal and State courts have concurrent jurisdiction over FELA claims, s*ee Kelley v. Norfolk & Southern Ry.*, 80 F. Supp. 2d 587, 589 (S.D. W. Va. 1999), but the standards for determining FELA liability and contractual defenses are federal in nature. *See Williams v. AMTRAK*, 161 F.3d 1059, 1061 (7th Cir. 1998) ("[FELA] provides a broad, federal tort remedy for railroad workers injured on the job."). The Court views this factor as neutral because the question of whether FELA bars the release directly impacts the propriety of the defendant's State claims. However, the defendant has not shown that Kentucky law needs to be clarified on any of

-14-

the issues presented.  Consequently, the first factor does not weigh in favor of abstention.

Under the second factor, courts must consider whether claims in the concurrent State court proceeding can be satisfactorily adjudicated, and whether necessary parties have been joined and are amenable to process.  *See Nautilus*, 15 F.3d at 378-79.  As a threshold matter, the parties disagree over the character of the issues this Court must resolve.  CSX contends that the relief sought in the instant action is narrow in that the Court must only determine the rights of the parties as to the settlement clauses at issue, not the broader liability issues raised in Kentucky.  However, a decision in CSX's favor—one declaring valid and enforceable the release and indemnity clauses as part of the settlement signed by Willie Collins—would directly preclude the defendant's State action.

In this case, the Court would have to apply FELA law in its analysis in order to reach the result CSX desires.  CSX explicitly concedes as much in the complaint.  *See* Pl.'s Compl. 5, No. 1 (requesting a declaration "[t]hat the provisions of the Release signed between Willie Collins and CSX[] are valid and binding . . . [and that the defendant's Kentucky civil claims are] precluded by the Release").  CSX is a party to the Kentucky action, and has already raised the release clause as a defense in that case, bringing the issue directly before the State court.  The  Kentucky court is entirely capable of determining the validity of that clause, and whether it bars the defendant's FELA claims.  For this Court to instead decide the issue would be less efficient, duplicative, and unnecessary.

The third factor similarly supports a decision to abstain because maintaining this action would cause unneeded entanglement between the federal and State court systems in light of the noted overlapping issues of law and fact.  CSX submits that even if the question of the release

-15-

clause's validity is properly before the Kentucky court, that court has not yet been presented with the issue of whether the defendant is required to indemnify CSX for the expenses it has incurred in defending the FELA claims.  Thus, it contends, this Court could properly decide the indemnification question without becoming entangled with the Kentucky proceedings.  The problem for CSX is that its argument presupposes the validity of the release clause.  The indemnity provision applies only if the claims are covered by the release.  Pl.'s Compl. Ex. A, at 3 (authorizing indemnification to the extent that losses or costs relate "in any way to the injuries or diseases *released herein*" (emphasis added)).  As the issue of release has already been presented to the Kentucky court, a decision from this Court on the defendant's indemnity obligations to CSX for defending against claims purportedly barred by the settlement agreement would cause confusion and potentially conflicting results.  At best, CSX's request for indemnification is premature until the Kentucky court determines the validity of the release clause.

Finally, under the fourth factor, parties may not use a declaratory judgment action merely as a procedural fencing device.  *See Shingleton*, 2007 U.S. Dist. LEXIS 83200, at *11-12.  A FELA action may not be removed once filed in state court unless it includes a separate federal question on the face of the complaint.  *See* 28 U.S.C. § 1445(a).  This factor also weighs in favor of abstention because the Kentucky court has first acquired jurisdiction over the issues presented in this case, and CSX may not remove the case to federal district court.  Its attempt to seek a concurrent determination on issues before the Kentucky court suggests that this declaratory action is being used to obtain a procedural advantage.

The Court finds that abstention is appropriate in this case.  It will thus abstain from deciding the issues presented in CSX's complaint, and **DISMISS** this action **WITHOUT PREJUDICE**.  A

dismissal without prejudice is warranted to reflect the fact that CSX may of course reinitiate its request for declaratory relief as to the indemnity provision in the settlement agreement once the Kentucky court properly addresses the questions on the release clause at issue, and how they pertain to the defendant's state claims.

**III.    Conclusion**

For the foregoing reasons, the Court **GRANTS** the defendant's Motion to Dismiss, and **DISMISSES** the complaint **WITHOUT PREJUDICE**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:          January 18, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE